FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 18 2016

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

TRI-STATE ARMATURE & ELECTRICAL WORKS, INC.,

    Plaintiff,

V.

TIMOTHY B. HOUSTON, ELECTRO DESIGN
ENGINEERING, INC., and CELETA STRIPLING,

    Defendants.

Civil Action No. 3:16 cv 134-DPM

JURY DEMANDED

This case assigned to District Judge Marshall
and to Magistrate Judge Volpe

---

## COMPLAINT

---

COMES NOW, Plaintiff Tri-State Armature & Electrical Works, Inc. ("Tri-State") and files this Complaint against Defendants Timothy B. Houston, Electro Design Engineering, Inc., and Celeta Stripling (collectively "Defendants"). Tri-State is a provider of various electrical services and equipment in Tennessee, Arkansas and Mississippi. Tri-State has been in business since 1920. Defendant Timothy B. Houston ("Houston") was Tri-State's Operations Manager for its Jonesboro, Arkansas facility. As alleged further herein, Defendant Houston commenced a tortious conspiracy to destroy Tri-State's Jonesboro, Arkansas business by advising Tri-State's employees and customers that Tri-State was going out of business and filing bankruptcy, which is untrue. Defendant Houston, directly and indirectly with other Defendants, has raided Tri-State's employees, is interfering with Tri-State's existing and future business relationships and has tainted Tri-State's reputation throughout Arkansas. Defendant Houston, along with other Defendants, has destroyed Tri-State's proprietary data, stolen Tri-State's property, confiscated Tri-State's trade secrets, tortiously interfered in Tri-State's business contracts and relations, and

defamed Tri-State. The combined efforts of Defendant Houston, along with the other Defendants, have damaged Tri-State's ability to service its customers properly and significantly interfered with its ability to do business in the State of Arkansas.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Tri-State is a corporation organized and existing under the laws of the State of Tennessee and maintains its principal place of business in the State of Tennessee. Accordingly, Tri-State is a citizen of Tennessee.

2. Defendant Houston, an individual, is a resident of the State of Arkansas, residing at 2907 Planters Drive, Jonesboro, Arkansas 72404. Defendant Houston was hired by Tri-State in 1996.

3. Defendant Electro Design Engineering, Inc. ("Defendant EDE") is a corporation organized and existing under the laws of the State of Florida maintaining its principal place of business at 8133 Eagle Palm Drive, Riverview, Florida 33578. Defendant EDE may be served with process in the State of Arkansas by service upon its registered agent, Incorp Services, Inc., 4250 Venetian Lane, Fayetteville, Arkansas 72703.

4. Defendant Celeta Stripling ("Defendant Stripling"), an individual, is a resident of the State of Arkansas residing at 701 Liberty Street, Marked Tree, Arkansas 72365. Defendant Stripling was previously employed by Tri-State as an Administrative Assistant.

5. This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1331 since it presents a federal question under the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4). Further, this Court has subject matter jurisdiction over this

controversy pursuant to 28 U.S.C. § 1332, inasmuch as there exists complete diversity between Plaintiff Tri-State and all Defendants. Further, all Defendants are subject to personal jurisdiction since Defendants are either residents or citizens of the State of Arkansas; and/or Defendants have had sufficient minimum contacts with the State of Arkansas with respect to the actions and events that give rise to this cause of action; and/or Defendants have had continuous, substantial and systematic contacts with the State of Arkansas to give rise to personal jurisdiction in the State of Arkansas. The amount in controversy is in excess of $75,000 exclusive of costs and interests.

6.      Venue for this action properly lies in the United States District Court for the Eastern District of Arkansas.

## FACTUAL BACKGROUND

7.      Tri-State is a provider of various electrical services and equipment in Tennessee, Arkansas and Mississippi. As part of its business, Tri-State sells and repairs electric motors, provides electrician contracting services in the industrial and construction markets, and sells various electrical equipment and supplies. Tri-State has been in business since 1920.

8.      Defendant Houston was a management representative with Tri-State with the position and title of Operations Manager for Tri-State's facility in Jonesboro, Arkansas.

9.      Houston was the highest level manager on site at Tri-State's facility in Jonesboro, Arkansas, which is located at 4712 East Highland Avenue, Jonesboro, Arkansas 72401. As part of his management position, Houston was responsible for overseeing various business-related activities for Tri-State's Jonesboro facility. His job duties involved management of the facility and its personnel, frequent contact with customers, submitting competitive bids to customers,

3

and general management oversight of Tri-State's operations in Jonesboro, Arkansas. His duties also included the selling of Tri-State's scrap metal and copper to vendors.

10.     Plaintiff Tri-State periodically gathers its scrap metal and copper and sells it to a scrap metal vendor, receives payment, and deposits such payment into Tri-State's bank account. During his employment, however, Defendant Houston hatched a scheme to sell Tri-State's scrap metal to a local vendor and to have the local vendor issue checks for the value of the scrap metal personally to him. Over a period of multiple years, Houston secretly stole and sold Tri-State's scrap metal to one or more scrap metal vendors, including TRG Jonesboro, LLC.   TRG Jonesboro, LLC issued checks made out to Defendant Houston personally for the sale of Tri-State's scrap metal, and Defendant Houston deposited those checks into his personal bank account at Iberia Bank.  Tri-State did not learn of this until after Defendant Houston had left employment.

11.     As a result of Defendant Houston's unlawful activities while serving as the Operations Manager, Tri-State has been forced to initiate a forensic accounting audit of Tri-State's Jonesboro facility to determine the full amount of the theft and fraud. It is believed that Defendant Houston stole thousands of dollars from Tri-State as part of this scheme, and Tri-State is presently determining whether Defendant Houston stole other amounts from Tri-State.

12.     During his employment as a management representative of Tri-State, Defendant Houston acquired knowledge of Tri-State's confidential information and trade secrets, including, but not limited to:  (1) price structure for all competitive bids; (2) facts related to Tri-State's customers, their identities and contact information, and their particular needs and practices with respect to purchasing Tri-State's products and services; (3) plans, strategies and proposals

4

relating to pricing, marketing, trade and commercial matters; (4) plans, strategies, designs, proposals, progress information and communications related to on-going projects and upcoming potential business prospects and leads; (5) facts related to financial data of Tri-State and Tri-State's labor and material costs, and other costs of doing business; and (6) facts related to Tri-State's profits, margins and profitability and other confidential financial data.

13.     Tri-State has not authorized, either orally or in writing, Defendant Houston to take, download, copy, use, disclose, or to permit any unauthorized person, entity or organization to use or disclose, the knowledge and information he obtained regarding Tri-State's trade secrets and confidential information.

14.     Throughout his employment, with the support of Tri-State and as a result of his access to, and use of Tri-State's trade secrets and confidential information, Defendant Houston gained knowledge of Tri-State's business and had significant contacts with Tri-State's customers with whom he worked directly and on an on-going basis.

15.     While he was still employed by Tri-State, Defendant Houston acted to unfairly and unlawfully compete with Tri-State by utilizing Tri-State's trade secrets and confidential information, with knowledge that such use was without authority and with the intention of taking or appropriating property of Tri-State.

16.     While Defendant Houston was still employed by Tri-State, Defendant Houston, and Defendant Stripling began secret plans to obtain employment with Defendant EDE, a direct competitor of Tri-State, and as part of these plans, Defendant Houston planned to steal Tri-State's trade secrets, confidential information, customers and accounts.

17.     In March and April 2016, Defendant Houston began deleting numerous files on Tri-State's computer systems.  Defendant Houston utilized the computer system as part of his employment with Tri-State.  This computer system was owned and provided by Tri-State to Defendant Houston so that Defendant Houston could perform his management duties.  In all, Defendant Houston destroyed or attempted to destroy over 3700 files from his work computer. Some of those files contained important and critical business information related to on-going projects of Tri-State involving Tri-State's customers.  Defendant Houston also downloaded Tri-State confidential information and trade secret information.  As a result of Defendant Houston's unlawful actions, Tri-State has been forced to secure the services of a forensic computer specialist to try to restore and recapture the information Defendant Houston destroyed or attempted to destroy while he was still employed by Tri-State.  Defendant Houston's actions in attempting to destroy Tri-State's business information have caused significant disruption and harm to Tri-State's business.

18.     On Monday April 18, 2016, Defendant Houston announced that he was resigning from his employment with Tri-State, and he departed on that same day.  The circumstances surrounding his resignation are especially troubling.  On the weekend before April 18, 2016, Defendant Houston was present at Tri-State's office, along with Defendant Stripling, and was actively involved in taking Tri-State's confidential data and trade secret information as part of his secret plan to go to work for a direct competitor.  Prior to his resignation, Defendant Houston offered employment to Tri-State's employees in an effort to have them resign their employment with Tri-State and go to work for him and his new employer.

19.     While still employed as the Operations Manager at Tri-State, Defendant Houston communicated to Tri-State employees that Tri-State was financially insolvent and on the verge

of filing for bankruptcy, all of which was untrue. Houston communicated to Tri-State employees that Tri-State would be closing its Jonesboro facility, which was also untrue. Defendant Houston, while employed as the Operations Manager at Tri-State, told these lies to Tri-State employees in order to have them resign their employment with Tri-State and go to work for him and his new employer, Defendant EDE. As a result of Defendant Houston's false and defamatory statements, the following former Tri-State employees resigned their employment on April 17, 2016: Administrative Assistant Defendant Stripling; Journeyman Electrician Keith Davis; Journeyman Electrician Jonathan Buckelew; Journeyman Electrician Robert Jeff Qualls; Journeyman Electrician Eric Wazenegger; Journeyman Electrician James Adam Smith; and Journeyman Electrician Edd Newman. While both individuals were still employed at Tri-State, Defendant Houston asked and/or required Defendant Stripling to assist in the setting-up of the business which would be competing with Tri-State, and Defendant Stripling did assist in that effort.

20.     After his resignation, and after raiding Tri-State of seven (7) key Tri-State employees, Defendant Houston, along with the other Defendants, immediately began unlawfully competing with Tri-State by using Tri-State's customer list, trade secrets, and confidential business information. On behalf of his new employer, Defendant EDE, Houston has made business proposals to Tri-State's customers. In addition, Defendant Houston has sent employees of Defendant EDE to one or more Tri-State customer work sites in an attempt to have employees of Defendant EDE continue a project(s) that the customer had contracted with Tri-State for Tri-State to perform. In so doing, Defendant Houston, along with the other Defendants, has misrepresented who they are working for and interfered with Tri-State's business and contractual relationships with Tri-State's customers.

21.     Defendant Houston and Defendant Stripling are currently employed by a competing business, Defendant EDE, and have used, and are continuing to use, Tri-State's confidential information and trade secrets for Defendants' own benefit.  Further, Defendant Houston along with the other Defendants, is contacting current and prospective customers of Tri-State to solicit them to become customers of Defendant EDE and are trying to sell them products and services of Defendant EDE through the use of Tri-State's confidential information and trade secrets.

22.     Defendant Houston and the other Defendants continue to solicit current and prospective Tri-State customers and continue to utilize the proprietary and confidential information and trade secrets obtained as a consequence of the individual Defendants' employment with Tri-State for their own purposes and to benefit themselves and their new employer, Defendant EDE.

23.     As alleged in the Complaint, Defendant Houston resigned his positon with Tri-State in April 2016 and, along with the other Defendants, engaged in a continuing effort to:

   a.     raid Tri-State of its employees;

   b.     set up employment with a competing employer;

   c.     conspire with the other Defendants to steal Tri-State's property;

   d.     destroy Tri-State's data and proprietary information;

   e.     utilize Tri-State's trade secrets and confidential information to engage in unfair competition;

f.     misrepresent themselves as agents of Tri-State to some and defame Tri-State to others;

g.     trespass, damage and/or commit fraud to Tri-State's computers used in or affecting interstate or foreign commerce;

h.     all in a willful endeavor to wrongfully interfere with Tri-State's existing and prospective business relationships throughout Arkansas and to damage Tri-State's reputation and its ability to service its customers in Arkansas.

## COUNT ONE

### BREACH OF FIDUCIARY DUTY, DUTY OF LOYALTY AND AGENCY RELATIONSHIP

24.     Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 23 above.

25.     When Defendant Houston and Defendant Stripling were employed by Tri-State, they were employees, agents and/or corporate officers of Tri-State, the principal, and owed Tri-State a fiduciary duty of loyalty, good faith and fair dealing which required them to, among other things, devote their full-time efforts to Tri-State's best interests.

26.     Defendant Houston and Defendant Stripling breached their fiduciary duties to Tri-State during their employment by using Tri-State's confidential information and trade secrets for their own benefit and for the benefit of Defendant EDE.

27.     Defendant Houston and Defendant Stripling further breached their fiduciary duty and duty of loyalty to Tri-State by accepting generous compensation in exchange for their

promise to devote all of their efforts to their responsibilities as a manager, employee, agent and/or corporate officer of Tri-State, notwithstanding having already taken steps to engage in a competing business, utilizing Tri-State's confidential information and trade secrets at times when they were still employed as a manager, agent and/or corporate officer of Tri-State.

28.    Defendant Houston and Defendant Stripling further breached their fiduciary duty and duty of loyalty to Tri-State by attempting to destroy Tri-State's computer information and electronic information, falsely advising Tri-State's employees and customers that Tri-State was closing its Jonesboro facility and was financially insolvent and going to have to file bankruptcy, asking and/or requiring Tri-State employees to assist in setting up a competing business while they were still employed by Tri-State, and other similar unlawful actions.

29.    Defendant Houston's actions and the actions of Defendant Stripling constitute a violation of Arkansas laws prohibiting breach of fiduciary duties, agency duties and duties of loyalty, good faith and fair dealing.

30.    Defendant Houston's actions and the actions of Defendant Stripling were wrongful and without privilege or lawful justification and have resulted in damage to Tri-State causing damages to Tri-State and causing them to be liable to Tri-State for general and special damages caused by their wrongful acts in an amount to be proven at trial.

31.    Defendant Houston and Defendant Stripling acted maliciously, willfully and in bad faith with intent to harm Tri-State, or with conscious indifference to the consequences of such actions.

## COUNT TWO

## MISAPPROPRIATION OF TRADE SECRETS

32.     Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 31.

33.     While Defendant Houston and Defendant Stripling were employed by Tri-State, they had access to trade secrets as that term is defined by Arkansas law (Ark. Code Ann. § 4-75-601 et seq.).  Such information is not commonly known or available to the public, and it (a) derives economic value, actual or potential, from not being known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

34.     Tri-State intended to keep this information confidential and has made reasonable efforts under the circumstances to maintain the secrecy of this information.  Moreover, Tri-State has not authorized the appropriation of its trade secrets by Defendant Houston, Defendant Stripling and/or Defendant EDE.

35.     Defendant Houston and Defendant Stripling have misappropriated Tri-State's trade secrets as they have utilized, or will utilize, those trade secrets without privilege for their own benefit and to the detriment of Tri-State.

36.     Because Defendant EDE is engaging in the same business as Tri-State, and Defendant Houston and Defendant Stripling are already employed by Defendant EDE in positions at Defendant EDE that are materially similar to that which each had while employed by

Tri-State, the individual Defendants and through them Defendant EDE, have used and disclosed and will be compelled to make use of or inevitably disclose Tri-State's trade secrets.

37.     The Defendants' misappropriation of Tri-State's trade secrets was and continues to be willful and malicious.

38.     Tri-State is entitled to all of the remedies and relief set forth under Arkansas law including, without limitation, injunctive relief, actual damages, special and general damages, and punitive and exemplary damages, and attorneys' fees.

## COUNT THREE

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND/OR CONTRACTUAL RELATIONS, PROSPECTIVE BUSINESS RELATIONS, ETC.

39.     Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 38.

40.     At all times prior to, during and after Defendant Houston's employment with Tri-State, Tri-State had legitimate business relationships with its current and prospective customers and with its own employees.

41.     By using Tri-State's confidential information and trade secrets for his own benefit with the intention of inducing Tri-State's current customers and prospective customers not to continue their business relationship or enter into new business with Tri-State, Defendant Houston along with the other Defendants, without justification or excuse, has unlawfully and tortiously interfered with Tri-State's business relations and prospective business relations with its employees, vendors and current and prospective customers.  Further, Defendant Houston, along with Defendant Stripling, tortuously interfered with Tri-State's contractual relations with its own

employees by communicating false information about Tri-State's financial information and telling employees that Tri-State would be filing bankruptcy and/or closing its Jonesboro facility in an effort to persuade the employees to terminate their employment with Tri-State and obtain employment with Defendant EDE.

42.     Tri-State has suffered damages and financial injury by Defendant Houston and Defendant Stripling's tortious interference with its business relations and prospective business relations with its employees, vendors, and current and prospective customers, in an amount which will be proven at trial.

43.     Defendant Houston, along with the other Defendants, have acted intentionally, maliciously, willfully and in bad faith with intent to harm Tri-State, or with a conscious indifference to the consequences of his actions and Tri-State is entitled to temporary, interlocutory and permanent injunctive relief, as well as compensatory and punitive damages.

## COUNT FOUR

## DEFAMATION

44.     Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 43.

45.     By and through his comments and communications to Tri-State's employees, former employees, vendors and customers, Defendant Houston along with the other Defendants, has defamed Tri-State thereby causing damage to Tri-State's reputation and business.

46.     Defendants knowingly published false statements about Tri-State's ability to deliver services and Tri-State's financial condition to third parties.

47.     These defamatory statements include, but are not limited to statements that Tri-State is closing its Jonesboro facility, going out of business and/or is filing for bankruptcy.

48.     Defendants knew these statements to be false at the time of the publication.

49.     Tri-State has suffered financial injury by these defamatory actions in an amount which will be proven at trial.

50.     Defendants have acted intentionally, maliciously, willfully and in bad faith with intent to harm Tri-State, or with a conscious indifference to the consequences of such actions and Tri-State is entitled to compensatory and punitive damages.

## COUNT FIVE

## CONVERSION

51.     Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 50 above.

52.     Tri-State has an ownership interest in its confidential information and trade secrets.

53.     Houston, along with the other Defendants while Houston was employed by Tri-State, converted and/or misappropriated Tri-State's confidential information and trade secret information.  By doing so, Defendants denied Tri-State possession and control of its property.

54.     Additionally, Defendants knowingly accessed Tri-State's secure database and computer system with the intention of wrongfully removing, destroying, and/or altering Tri-State's proprietary data thereby interfering in Tri-State's ownership rights therein.

14

55.     Tri-State was damaged by Defendants' actions in that it was deprived of the lawful use of its confidential information and trade secret information and other property that Defendants converted and/or misappropriated without justification or consent.

56.     Tri-State has been damaged and is entitled to recover from Defendants for the conversion and/or misappropriation of Tri-State's trade secrets and confidential information.

## COUNT SIX

## UNJUST ENRICHMENT

57.     Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 56 above.

58.     Defendant Houston and Defendant Stripling were paid a salary and/or other benefits during the time they were devoting time to a competing business venture with Defendant EDE.

59.     Defendant Houston and Defendant Stripling appropriated Tri-State's confidential information and trade secrets for their own personal use and for the use and benefit of their new business venture with Defendant EDE.

60.     Defendant Houston and Defendant Stripling were unjustly enriched by receipt of money from Tri-State, and this enrichment was at the expense of Tri-State. Defendant EDE was unjustly enriched by its receipt of services of the individual Defendants when such services were paid for by Tri-State.

61.     Tri-State is entitled to repayment of money paid to Defendant Houston and Defendant Stripling for the time that they devoted efforts and attention to their own use and benefit and/or for the use and benefit of Defendant EDE during their employment with Tri-State, and for the value of such services received by Defendant EDE.

## COUNT SEVEN

## FEDERAL COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030(a)(4)

62.     Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 61 above.

63.     By knowingly and intentionally with the intent to defraud Tri-State, accessing and downloading and deleting Tri-State's protected computer information for the benefit of Defendants and to the detriment of Tri-State, Defendant Houston and Defendant Stripling engaged in a violation of the Federal Computer Fraud and Abuse Act.  Defendants were acting for their own use and benefit and for the use and benefit of their new business venture with Defendant EDE at the time they trespassed, damaged and/or committed fraud impacting Tri-State's computers.  All Defendants benefited from this unlawful downloading and conversion of Tri-State's computer information, and such conduct impacted computers used in, or affecting interstate or foreign commerce.

64.     Tri-State has been damaged as a result of the violation of the Federal Computer Fraud and Abuse Act, and all Defendants obtained and received the value of Tri-State's computer information.

65.     Tri-State was damaged and is entitled to damages against all Defendants for the computer information trespass, damage, fraud and theft.

## COUNT EIGHT

### FRAUD

66.     Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 65 above.

67.     Defendant Houston and Defendant Stripling converted for their own use and benefit and for the use and benefit of Defendant EDE, Tri-State's trade secrets and confidential information.  By concealing their efforts on behalf of Defendant EDE, Defendant Houston and Defendant Stripling falsely represented that they were acting in accordance with and would continue to act in accordance with the duties of best efforts, loyalty and the like and the fiduciary duties they owed as employees, agents and/or management representatives of Tri-State. Defendant Houston and Defendant Stripling had a confidential relationship with Tri-State and had duties to communicate material facts to Tri-State.  Defendant Houston and Defendant Stripling knew that their representations to Tri-State were false and that they were withholding material information at all relevant times.   Defendant Houston and Defendant Stripling concealed these efforts in furtherance of their scheme to prevent Tri-State from taking any preventive or prophylactic steps to minimize the economic effect or commercial damage caused by their scheme.   Tri-State justifiably relied upon the silence of Defendant Houston and Defendant Stripling and their continuation as officers, employees, agents and/or management representatives of Tri-State in relation to their belief that they had and would continue to abide by all duties and obligations owed to Tri-State implied by fact and law.   In addition, the

Defendants fraudulently held themselves out as successors to ongoing contracts of Tri-State with Tri-State's customers during the pendency of ongoing contracts.

68.     The acts and omissions described in paragraph 67 constitute fraud by the individual Defendants.

69.     Tri-State suffered and continues to suffer general and special damages on account of this fraud.

## COUNT NINE

## THEFT OF PROPERTY

70.     Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 69 above.

71.     While employed at Tri-State in the capacity of a management representative, Defendant Houston sold Tri-State's property (copper and scrap metal) for his own personal benefit causing damages to Tri-State and thereby denied Tri-State of the value and/or use of its property that should have been sold for the use and benefit of Tri-State.

72.     Tri-State was damaged and is entitled to damages against Houston for the theft of Tri-State's property.

## COUNT TEN

## CIVIL CONSPIRACY

73.     Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 72 above.

74.     Defendants contrived a common design to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means.

75.     Defendants have taken multiple overt acts in furtherance of the conspiracy that has resulted.

76.     For example, Defendants have conspired to unlawfully convert Tri-State's personalty and to deprive Tri-State of its use.

77.     For example, Defendants have conspired to unlawfully access Tri-State's database and computer systems without authorization and to destroy, remove and/or alter Tri-State's proprietary data.

78.     As a result of these intentional concerted acts, Defendants have caused Tri-State injury to its business, to its reputation and to its general good will, for which they are liable.

## COUNT ELEVEN

## REPLEVIN

79.     Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 78 above.

80.     As alleged herein, Defendants are in wrongful possession of Tri-State's property.

81.     Tri-State seeks a writ of replevin ordering the immediate return of this property to Tri-State.

## COUNT TWELVE

## NEGLIGENT MISREPRESENTATION

19

82.     Tri-State re-alleges and incorporates, as if fully set forth herein the allegations of paragraphs 1 through 81 above.

83.     After their employment with Tri-State ended, the individual Defendants negligently misrepresented their affiliation with Tri-State to Tri-State customers.

84.     Specifically, the individual Defendants notified these customers that they were communicating on behalf of Tri-State as its successor, when in fact they had already left Tri-State and were conspiring to interfere with these Tri-State customer relationships on behalf of themselves and Defendant EDE.

85.     Tri-State has been damaged as a result of the Defendants' negligent misrepresentations and continues to suffer injury as a result thereof.

## COUNT THIRTEEN

## CONSTRUCTIVE TRUST

86.     Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 85 above.

87.     Defendants, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by other forms of unconscionable conduct, artifice, concealment or questionable means, claim an interest in property which they ought not in equity or good conscious retain.

88.     Namely, Defendants claim an interest in Tri-State's property and business relationships, and the revenues and profits derived therefrom.

20

89.     Because these interests have been obtained by inequitable means and with knowledge that Tri-State is truly entitled to these interests, Tri-State asks this Court to declare that such interests are to be held in constructive trusts for the benefit of Tri-State.

90.     Accordingly, any proceeds from any services provided using Tri-State's converted property or derivative of Tri-State's existing business relationships, should be held in constructive trust for Tri-State's benefit.

## COUNT FOURTEEN

### TEMPORARY RESTRAINING ORDER

91.     Tri-State re-alleges and incorporates by reference the allegations of paragraphs 1 through 90 above.

92.     Tri-State will suffer immediate and irreparable injury, loss, or damage if Tri-State's property is not immediately returned.

93.     Defendants are in possession of proprietary Tri-State data improperly removed or obtained by Defendants from Tri-State's data base and computer systems.

94.     Tri-State will suffer immediate and irreparable injury, loss, or damage if this Court does not order Defendants to take steps to affirmatively preserve, and not dispose of, this data.

95.     Additionally, Defendants have made untruthful representations to third-parties about Tri-State's financial condition.

96.     These representations have caused third-parties to question Tri-State's financial condition and, in some cases, to unilaterally cancel previously scheduled projects.

97.     Defendants have also misrepresented their affiliation with Tri-State as ongoing when, in fact, no such relationship exists.

98.     These representations have caused some third-parties to believe they are conducting business with Tri-State when, in fact, they are not.

99.     Tri-State will suffer immediate and irreparable injury, loss or damage, if this Court does not:

        a.     Restrain Defendants' use, movement or disposing of Tri-State's property and proprietary data;

        b.     Restrain Defendants from interfering with Tri-State's business relationships, both present and prospective; and,

        c.     Restrain Defendants from making any representations about their affiliation with Tri-State or about Tri-State's financial condition until such time as a hearing may be held on this request.

## COUNT FIFTEEN

## PRELIMINARY INJUNCTION

100.    Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 99 above.

101.    As a result of Defendants' conversion of Tri-State's property, Tri-State suffered actual damages and continues to suffer damages as the result of its impaired ability to provide services to its customers.

22

102.    As a result of Defendants' conversion, defamation and negligent misrepresentation, Tri-State has already suffered interference in or the cancellation of its involvement in its own ongoing projects.

103.    As a result of Defendants' defamation and negligent misrepresentation, Tri-State has suffered and continues to suffer damage to its reputation and good will.

104.    As a result of Defendants' unauthorized access to Tri-State's data base and computer systems, Tri-State has suffered the loss and possible alteration of its proprietary data and faces the risk that Defendants will use Tri-State's proprietary data to unfairly interfere and compete in its relationships with its customers and business partners.

105.    Unrestrained, this conduct shall cause Tri-State irreparable injury for which there exists no adequate remedy at law.

106.    Accordingly Tri-State seeks preliminary injunctive relief mandating that Defendants:

a.    Return wrongfully acquired property in their possession;

b.    Pay any proceeds acquired as a result of Defendants' wrongful use of Tri-State's personalty into a third-party account, either with an escrow agent or with the Court;

c.    Pay any proceeds acquired as a result of Defendants' business dealings with Tri-State customers into a third-party account, either with an escrow agent or with the Court;

d.    Refrain from representing any affiliation with Tri-State;

e.    Refrain from disparaging Tri-State;

f.    Refrain from interfering with Tri-State's existing or prospective business relationships; and

      g.     Refrain from using Tri-Sate's proprietary information wrongfully acquired by Defendants.

107.    Tri-State alleges a likelihood of success on the merits, and intends to prove that Defendants took steps to access, download, replicate and/or destroy Tri-State's proprietary data without authorization, all for use in or to further the Defendants' new business endeavor.

## COUNT SIXTEEN

## PERMANENT INJUNCTION

108.    Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 107.

109.    Upon information and belief, there is a sufficient probability that Defendants will continue to conduct themselves in a manner that is violative of the rights of Tri-State and will continue to injure Tri-State.

110.    Accordingly, Tri-State seeks permanent injunctive relief upon the final adjudication of this action, restraining Defendants from representing any affiliation with Tri-State, disparaging Tri-State, tortiously interfering with Tri-State's existing or prospective business relationships; and using any of Tri-State's proprietary information or property wrongfully acquired by Defendants.

## COUNT SEVENTEEN

## PUNITIVE DAMAGES

111.    Tri-State re-alleges and incorporates as if fully set forth herein, the allegations of paragraphs 1 through 110 above.

112.    Defendants have acted maliciously and with the intent to harm Tri-State, or with conscious indifference to the consequences of their actions.  Consequently, Tri-State is entitled to recover punitive damages from Defendants in an amount to be determined at trial.

WHEREFORE, Tri-State respectfully requests the following:

a.    That this Court issue process and summons to Defendants;

b.    That this Court issue the injunctive relief set forth above;

c.    That a jury trial be conducted and Tri-State be awarded damages incurred, or to be incurred, against Defendants in an amount to be determined at trial, but in any event in excess of $75,000 exclusive of interest and costs as to each Defendant on each count within the Complaint;

d.    That Tri-State be awarded punitive damages against Defendants in an amount to be determined at trial;

e.    That Tri-State be awarded its reasonable costs of litigation including attorneys' fees incurred in bringing this action; and

f.    That Tri-State be awarded such other relief as is just and proper under the circumstances.

Respectfully submitted, this 17th day of May 2016.

Respectfully submitted:

JAMES M. SIMPSON AR Bar # 2006115
SHAWN R. LILLIE AR Bar # 2006135
ALLEN, SUMMERS, SIMPSON,
LILLIE & GRESHAM, P.L.L.C.
80 Monroe Avenue, Suite 650
Memphis, Tennessee 38103
Telephone:  (901) 763-4200
Facsimile:  (901) 684-1768

COUNSEL FOR PLAINTIFF
TRI-STATE ARMATURE & ELECTRICAL WORKS, INC.